**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 26-cv-25133-BLOOM**

GRANAIO, LLC,

Appellant,

v.

CITY OF NEW ORLEANS,

Appellee.
______________________________/

**OMNIBUS ORDER ON MOTION FOR LEAVE TO APPEAL AND EMERGENCY MOTION**

**THIS CAUSE** is before the Court upon Appellant Granaio, LLC's ("Appellant") Motion for Leave to Appeal from the Order Denying Plaintiff's Emergency Motion for Preliminary Injunction ("Motion for Leave to Appeal"), ECF No. [1]. Appellee the City of New Orleans ("Appellee") filed a Response in Opposition, ECF No. [6], and Appellant filed a Reply, ECF No. [10]. Also before the Court is Plaintiff's Emergency Motion for Stay Pending Appeal Pursuant to Fed. R. Bankr. P. 8007(b), and for Immediate Administrative Stay, ECF No. [8] ("Emergency Motion"). The Court has considered the Motions, the record, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion for Leave to Appeal is granted and the Emergency Motion is denied.

## I. BACKGROUND

Appellant owns a group of vacant buildings in New Orleans, Louisiana (the "Property"). ECF No. [7-1] at 2. On August 26, 2019, the City of New Orleans Code Enforcement and Hearings Bureau entered an administrative judgment as to the property, finding 17 separate code violations, declaring the property blighted under City Code, and ordering demolition. *Id*. On September 10, 2019, Appellant appealed the administrative judgment to the Orleans Parish Civil District Court

(the "Louisiana Civil Court"). *Id*. On November 15, 2021, Appellant and Appellee mediated and agreed to a consent judgment prescribing demolition proceedings. The consent judgment was entered by the Louisiana Civil Court on January 6, 2022, and the administrative judgment was dismissed with prejudice. *Id*.

On July 25, 2023, Appellee inspected the Property and determined it was an imminent danger to the public. *Id*. A fire on the Property on September 17, 2023 caused further deterioration, and Appellant voluntarily demolished one building. *Id*.

On September 21, 2023, Appellee exercised its emergency authority and posted a notice of emergency demolition at the Property. *Id*. In response to the notice of emergency demolition, Appellant sought a temporary restraining order and injunctive relief from the Louisiana Civil Court on September 29, 2023. *Id*. In January 2024, the Louisiana Civil Court denied injunctive relief and dismissed the case with prejudice, and Appellant appealed. *Id*.[1] On December 30, 2024, the Court of Appeal of Louisiana, Fourth Circuit affirmed the dismissal. *Id*.

On June 24, 2026, Appellant filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Petition"). ECF No. [1] ¶ 1. Appellant's principal asset is the Property. *Id.* ¶ 2.

On June 30, 2026, Appellant commenced an adversary proceeding in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") against Appellee seeking to enjoin Appellee's post-Petition demolition of structures on the Property. *Id.* ¶ 3. Appellant argued that the demolition should be stayed because such activities are not exempted from the automatic stay under 11 U.S.C. § 362(b)(4), as Louisiana law secures the costs of

[1] With the first appeal pending, Appellant filed a second petition for injunctive relief in the Louisiana Civil Court which was also dismissed. *Id*. Appellant sought supervisory review in the Louisiana Supreme Court, which was denied in May 2024. *Id*.

municipal demolition by a lien and privilege against the affected immovable property. *Id.* at 8 and ¶ 3. On July 8, 2026, Appellant filed its Emergency Motion for Temporary Restraining Order and Preliminary Injunction ("Injunction Motion") in the Bankruptcy Court. *Id.* ¶ 2. The Injunction Motion was supported by a verified complaint, the declaration of Thomas Dyer, P.E., and four engineering reports, dated October 2021 through July 2, 2026, each concluding that the concrete structures on the Property are structurally sound. *Id.* Appellee did not provide any responsive sworn evidence. *Id.*

Following the Petition being filed, and continuing after the Injunction Motion was filed, Appellee demolished additional structures on the Property, including more than fifty residential units. *Id.* ¶ 3. On July 13, 2026, Appellee filed its Emergency Motion to Confirm Inapplicability of Automatic Stay Pursuant to 11 U.S.C. § 362(b)(4) (the "Stay Inapplicability Motion") in the Bankruptcy Court . *Id.* ¶ 4. The Bankruptcy Court heard the Injunction Motion and the Stay Inapplicability Motion together at a ten-minute, non-evidentiary hearing on July 15, 2026. *Id*. On July 17, 2026, the Bankruptcy Court entered its order granting the Stay Inapplicability Motion (the "Stay Order"), holding that Appellee's demolition and abatement activities fall within the police and regulatory power exception of 11 U.S.C. § 362(b)(4). *Id*.

On July 21, 2026, the Bankruptcy Court entered its order denying the Injunction Motion ("PI Denial Order") "[c]onsistent with and for the reasons stated in" the Stay Inapplicability Order. *Id.* ¶ 5. In the PI Denial Order, the Court further reasoned that (1) full faith and credit is owed to pre-Petition orders of Louisiana courts denying Appellant injunctive relief and (2) Appellant had not demonstrated a likelihood of success or that the public interest favored protecting "property that was already deemed an imminent danger to the public." *Id*. The Bankruptcy Court did not

conduct an evidentiary hearing or make findings addressing Thomas Dyer's engineering record. *Id*.

Appellant then filed the instant Motion for Leave to Appeal, seeking to appeal the PI Denial Order to this Court, reversal of the PI Denial Order, and remand. *Id.* ¶ 8.[2] Appellant argues that leave to appeal the PI Denial Order should be granted because the order involves a controlling question of law as to which there is substantial ground for difference of opinion, and an immediate appeal may materially advance the ultimate termination of litigation. *Id.* ¶ 9. Appellee responds that none of those elements are met, and the Motion for Leave to Appeal—which is ultimately derivative of the appeal of the Stay Order—should be denied. ECF No. [6]. Appellant replies that the remaining questions are legal, not factual, and immediate review is proper. ECF No. [10].

On August 20, 2026, Appellant filed the Emergency Motion, asserting that Appellee "is engaged in active, ongoing demolition of the sole substantial asset of Appellant's bankruptcy estate." ECF No. [8] at 1. Appellant therefore asks the Court to issue an administrative stay pending the Court's resolution of the Emergency Motion and ultimately to enjoin Appellee from demolishing the Property pending final disposition of the appeal. *Id.* at 7.

## II. LEGAL STANDARD

In general, appellate review is postponed until after the entry of final judgment. *Coopers & Lyband v. Livesay*, 437 U.S. 463, 475 (1978). However, district courts are authorized to grant leave to hear appeals of interlocutory orders entered by a bankruptcy court. 28 U.S.C. § 158(a). Such power should only be used "sparingly since interlocutory bankruptcy appeals should be the exception, not the rule." *In re Hinners*, No. 12-80924-MC-MARRA, 2012 WL 4049967, at *1

[2] Simultaneously, Petitioner appealed the Stay Order as of right. *Id.* ¶ 6. That case is before District Judge Jeffrey T. Kuntz. *See Granaio, LLC v. City of New Orleans*, Case No. 1:26-cv-25132-JTK.

(S.D. Fla. Sept. 13, 2012) (citing *United States Trustee v. PHM Credit Corp.*, 99 B.R. 762, 767 (E.D. Mich. 1989)). The burden of persuasion rests on the moving party to convince the court "that exceptional circumstances justify a departure" from the general rule. *Coopers*, 437 U.S. 463, 475 (1978).

In assessing whether an interlocutory appeal should be permitted, 28 U.S.C. § 158(a) does not provide guidance. Thus, district courts turn to 28 U.S.C. § 1292(b), which governs discretionary interlocutory appeals from district courts to courts of appeals. *In re Charter Co.*, 778 F.2d 617, 620 n. 5 (11th Cir. 1985). Under § 1292(b), to be granted interlocutory review, the moving party must demonstrate that (1) the order presents a controlling question of law (2) over which there is a substantial ground for difference of opinion among courts, and (3) the immediate resolution of the issue would materially advance the ultimate termination of the litigation. *See McFarlin v. Conseco Svcs., LLC*, 381 F.3d 1251, 1255 (11th Cir. 2004).

## III. DISCUSSION

### A. Controlling Question of Law and Substantial Ground for Difference of Opinion

#### i. 11 U.S.C. § 362

The United States Bankruptcy Code contains a provision for automatic stays at 11 U.S.C. § 362. Under this provision, once a debtor files a petition, the petition operates as a stay of, among other things, (1) the commencement or continuation of actions or proceedings against the debtor, (2) the enforcement of a judgment against the debtor, and (3) any act to obtain possession of the property of the debtor's estate. 11 U.S.C. § 362(a)(1), (2), (3). Importantly, it also acts as a stay of "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(a)(4).

However, the automatic stay provision has exceptions. As relevant here, the filing of a petition does not operate as a stay

> under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's [] police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power[.]

11 U.S.C. § 362(b)(4). A governmental unit, in pursuit of its police or regulatory power, can still commence or continue actions or proceedings against the debtor, enforce a judgment against the debtor, or obtain possession of the property of the debtor's estate.

Furthermore, Louisiana Revised Statute § 33:4766 provides that when a municipality undertakes to demolish, remove, or maintain a structure, the municipality "has a privilege and lien upon [the] immovable and its improvements," thus making the owner personally liable for the cost of demolishing, removing, or maintaining the structure (the "Louisiana Lien Statute"). To preserve such a lien, the mayor of the municipality must file and record an affidavit describing the structure and the costs incurred. La. R.S. § 4766(D).

Turning to the underlying proceedings, the Bankruptcy Court expressly found that Appellee's "actions taken against the Property fall within its police and regulatory power" and therefore fall into § 362(b)(4). ECF No. [7-2] at 4. The Bankruptcy Court further found that its ruling did not "implicate the creation, perfection, or enforcement of a demolition-related lien," as that "requires certain actions which [Appellee] has not taken." *Id.* at 5.

Appellant argues that the scope of § 362(b)(4) is a "controlling question of pure statutory interpretation." ECF No. [1] ¶ 11. That is, the text of § 362(b)(4) excepts qualifying governmental action only from "paragraph (1), (2), (3), or (6) of subsection (a) of this section." *Id.* The prohibition on acts to create liens remains. *Id.* As such, Appellant contends that Appellees' demolition of the Property during the pendency of his Petition is unlawful, as it has the effect of creating a lien on the Property, and the § 362(b)(4) exception does not affect the automatic stay

found in § 362(a)(4). *Id.* At the very least, this "presents a substantial ground for difference of opinion." *Id.*

Appellees respond that Petitioner has not "identified a substantial ground for difference of opinion on a controlling question." ECF No. [6] ¶ 2. Appellant's argument "depends on lien activity that the Court expressly found had not occurred." *Id.*

Appellant replies and points out that the Bankruptcy Court memorialized an important concession from Appellee: "that the creation, enforcement, and perfection of a lien to which it may be entitled under a state statute remains subject to the automatic stay." ECF No. [10] (citation omitted).

The Court finds that this presents a controlling question of law. An issue meets this standard if it deals with a question of "pure" law or matters that can be decided "quickly and cleanly without having to study the record." *McFarlin*, 381 F.3d at 1258, 1260–62 (citation omitted). "[A] controlling question is one that rises from the details of the case to a place of relevance among similar cases." *In re Pac. Forest Prods. Corp.*, 335 B.R. 910, 920 (S.D. Fla. 2005) (citations omitted). Here, that standard is met. Appellant does not seek to appeal the Bankruptcy Court's conclusion that Appellee's actions otherwise meet the criteria for the § 362(b)(4) exception. Rather, Appellant asks whether an otherwise legitimate action under § 362(b)(4) can nonetheless be subject to the automatic stay if it has the unintended, collateral effect of creating an automatically stayed event. That tension—here, between § 362(b)(4) and § 362(a)(4)—is a pure question of law that the Court can resolve without resort to the facts of this particular case.

Moreover, the Court finds that there is substantial ground for difference of opinion on this issue. The Court begins with the Bankruptcy Court's conclusion that a lien was not created because

Appellee did not take "certain actions." ECF No. [7-2] at 5. It is true that § 4766 requires a lien to be preserved to be enforced and certain steps must be taken by the municipality to preserve the lien. La. R.S. § 4766(C), (D). What is not clear, by contrast, is whether "preservation" or "enforcement" of the lien is equivalent to "creation" of the lien, as contemplated by 11 U.S.C. § 362(a)(4). No Louisiana or federal court has addressed the issue in this context, yet some cases are instructive.

In *Dixie Bldg. Material Co. v. Massachusetts Bonding & Ins. Co.*, the Supreme Court of Louisiana faced Act 298 of 1926, a statute that was analogous in several material respects. 167 La. 399 (1928). Its Section 1 "grants a lien upon immovable property." *Id.* at 401. Its Section 2 prescribed steps for the recordation of certain documents "in order to preserve the lien created by statute." *Id.* The Supreme Court of Louisiana explained that "[S]ection 1 creates a lien . . .. Section 2 prescribes the method of preserving the lien created by the statute." *Id.* at 402. Indeed, it seems that the creation of a lien necessarily precedes its preservation and enforcement. *See Du-Mar Marine Serv., Inc. v. State Bank & Tr. Co. of Golden Meadow, La.*, 697 F. Supp. 929, 935 (E.D. La. 1988) ("The essential purpose of the filing of the lien is to give constructive notice of its existence." (quoting *United States v. Sirico*, 247 F. Supp. 421, 422 (S.D.N.Y. 1965))).

Here, § 4766(A) provides that the municipality "*has* a privilege and lien[.]" La. R.S. § 4766(A) (emphasis added). Section D details how to preserve that lien via filing and recordation. La. R.S. § 4766(D). There is room to argue that § 4766 *creates* a lien, as expressly forbidden by the automatic stay in 11 U.S.C. § 362.

The remaining question, then, is how to resolve the tension between 11 U.S.C. § 362(b)(4) and 11 U.S.C. § 362(a)(4). That is, when an exercise of valid police or regulatory power has the

effect of creating a lien, should the exercise of police power go forward unstayed, or should it be stayed given its necessary consequences?

While the law on this issue is not well-developed, there is at least some guidance in the case law. In *In re McFarland*, the Bankruptcy Court of the Middle District of Florida confronted a governmental unit's actions that appeared to fall under § 362(b)(4) but had the effect of creating a lien on property subject to a bankruptcy petition. No. 3:05-00688-JAF, 2008 WL 4550378 (Bankr. M.D. Fla. Apr. 24, 2008). The court held that "although it appears that the [governmental unit]'s action of recording the post-petition Administrative Order was done for the purpose of enforcing its governmental regulatory powers, and not to generate or collect revenues, it effectively created a lien upon all Plaintiff's non-homestead real properties, which qualified as property of the estate." *Id.* at *4. Thus, the governmental unit's actions went "outside the confines of the exception" and were not permitted. *Id*. Similarly, the Eighth Circuit has indicated that, "as a general matter, § 362(b)(4) does not include governmental actions that would result in a pecuniary advantage to the government *vis à vis* other creditors of the debtor's estate." *In re Commonwealth Cos., Inc.*, 913 F.2d 518, 523 (8th Cir. 1990). A lien and privilege would certainly have such an effect, and the implication appears to be that Appellee's actions should be stayed insofar as they "result in a pecuniary advantage" relative to other creditors.

In contrast, some courts focus on the purpose of the § 362(b)(4) exemption—to prevent a debtor from "frustrating 'necessary governmental functions by seeking refuge in bankruptcy court.'" *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1024 (2d Cir. 1991) (citation omitted). Such a view emphasizes that "the exception to the automatic stay recognizes that the government must be able to enforce law uniformly without regard to the debtor's position in bankruptcy court." *In re Blunt*, 210 B.R. 626, 634 (Bankr. M.D. Fla. 1997) (citing *Brock v. Rusco Industries*, 842 F.2d

270, 273 (11th Cir. 1988)). A decision that an undisputedly regulatory action having the effect of creating a lien must be stayed would squarely frustrate Appellee's ability to carry out necessary functions. Particularly where Appellee's actions do not "primarily relate to the protection of the pecuniary interest in the debtors' property," *State of Missouri v. U.S. Bankr. Ct. for the E.D. of Ark.*, 647 F.2d 768, 776 (8th Cir. 1981), a reasonable mind could find that staying the demolition is directly contrary to § 362(b)(4)'s aims.

In sum, it is not merely that this is a question of first impression or that binding authority is lacking that makes this issue subject to reasonable differences of opinion. *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996). It is that there is substantial weight on each side of the opposing arguments to the disputed ruling. *Id*. Thus, the Court finds that on this issue of controlling law, there is substantial ground for difference of opinion.

**ii. Full Faith and Credit**

The next issue is "[w]hether full faith and credit principles, 28 U.S.C. § 1738, may be applied to prepetition state-court rulings to resolve the distinct federal question – arising only upon the filing of the petition – of the scope and applicability of the automatic stay under 11 U.S.C. § 362." ECF No. [1] ¶ 7(b). Indeed, the Bankruptcy Court's PI Denial Order stated that "the Court must give full faith and credit to the orders entered by multiple Louisiana courts denying the Debtor the same injunctive relief it now seeks from this Court." ECF No. [1] at 9. The Stay Inapplicability Order further explained that Appellant's "entitlement to an injunction or restraining order has already been litigated in multiple courts in Louisiana and the Court will not allow [Appellant] to re-litigate it here." *Id.* at 14.

According to the full faith and credit statute, "state judicial proceedings 'shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.'" *Marrese v. Am. Acad. of Orthopaedic*

*Surgeons*, 470 U.S. 373, 380 (1985) (quoting 28 U.S.C. § 1738). In the context of judgments, "'the full faith and credit obligation is exacting.'" *V.L. v. E.L.*, 577 U.S. 404, 407 (2016) (quoting *Baker v. Gen. Motors Corp.*, 522 U.S. 222, 233 (1998)). That is, "'[a] final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land.'" *Id.* (quoting *Baker*, 522 U.S. at 233).

But importantly, in Louisiana, "[w]hen new facts intervene before the second suit, furnishing a new basis for the claims of the parties, the issues are no longer the same, and the former judgment cannot be pleaded in bar." *Ins. Assocs., Inc. v. Francis Camel Const., Inc.*, 95-1955 (La. App. 1 Cir. 5/10/96), 673 So. 2d 687, 689 (citing *Campbell v. Gullo*, 142 La. 1082, 78 So. 124, 125 (1918)). Indeed, preclusive effect of an earlier order is not given "when the underlying, operative facts upon which the court's prior decision was based have changed." *St. Charles Surgical Hosp., L.L.C. v. Louisiana Health Serv. & Indem.*, 2025-0290 (La. App. 4 Cir. 1/23/26), *writ granted*, 2026-00227 (La. 5/19/26), *and writ granted*, 2026-00241 (La. 5/19/26) (citations omitted).

Here, there is no doubt that a bankruptcy proceeding stands on very different footing than injunctive relief sought in response to an emergency demolition. Indeed, the Louisiana courts did not have to address a bankruptcy proceeding at all; their decision rested on an entirely different set of facts. As such, the Court does not find that full faith and credit principles should preclude this Court or the Bankruptcy Court from independently adjudicating whether a stay is warranted, as Louisiana law would not compel that result.

**B. Effect of Immediate Resolution on the Ultimate Termination of the Litigation**

Appellant argues that immediate review will "preserve this litigation." ECF No. [1] ¶ 12. Indeed, absent appellate review, Appellee's "continuing demolition will destroy the *res* of the

adversary proceeding and moot both this appeal and the appeal of the Stay Order." *Id*. Appellee responds that because the requested appeal substantially overlaps with the appeal of the Stay Order, this second appeal would only add another layer of appellate proceedings concerning the same dispute. ECF No. [6] ¶ 3.

In assessing whether the immediate resolution of the issue would materially advance the ultimate termination of the litigation, the Court need simply assess whether the "resolution of [the] controlling legal question would serve to avoid a trial or otherwise substantially shorten litigation." *McFarlin*, 381 F.3d at 1259. And the Court finds this element met. Resolving whether Appellant is entitled to a stay of demolition will allow the Bankruptcy Court to proceed to the merits of its adjudicatory tasks. It will allow the bankruptcy proceedings to move forward by resolving how the *status quo* is and is not meant to be maintained during the pendency of the proceedings. For this reason, the Court finds that resolving whether a stay of demolition is required would materially advance the ultimate termination of the litigation.

The Court concludes that Appellant has met its burden of establishing that an interlocutory appeal is warranted.

**C. Emergency Motion—Stay of Demolition Pending Appeal**

Pursuant to Federal Rule of Bankruptcy Procedure 7065, Federal Rule of Civil Procedure 65 applies to govern the issuance of any injunctive relief in this case. Before an order granting a preliminary injunction may be issued, the nonmoving party must have notice and an opportunity to respond to the injunction. Fed. R. Civ. P. 65(a)(1); *see also Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 434 n.7 (1974).

However, a Court can issue a temporary restraining order without notice if "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury,

loss, or damage will result to the movant before the adverse party can be heard in opposition"; and "(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

The Emergency Motion seeks injunctive relief in the form of a stay of demolition activities. However, Appellees have not had a chance to respond to the requested injunctive relief, nor has the Court had an opportunity to hold a hearing on the matter. Thus, a preliminary injunction is unavailable. Moreover, neither the Motion for Leave to Appeal nor the Emergency Motion constitutes a verified complaint or contains an affidavit in support. As such, a temporary restraining order is also improper, and the Emergency Motion is denied without prejudice.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUGED** as follows:

1. Appellant's Motion for Leave to Appeal, **ECF No. [1]**, is **GRANTED.**
2. Appellant's Emergency Motion, **ECF No. [8]**, is **DENIED WITHOUT PREJUDICE**.
3. Appellant shall file a brief within **30 days** after the docketing of notice that the record has been transmitted or is available electronically in the Court's docket.

**DONE AND ORDERED** in the Chambers at Miami, Florida on August 21, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record